## UNITED PACIFIC INSURANCE COMPANY, Plaintiff,

v.

## FIRST INTERSTATE BANCSYSTEMS OF MONTANA, INC., d/b/a First Interstate Bank of Colstrip; Keith Brighton; and Continental Casualty Insurance Company, d/b/a American Casualty Company, Defendants.

### No. CV 85–345–BLG–JFB.

United States District Court,
D. Montana,
Billings Division.

July 13, 1987.

James L. Jones, Anderson Law Firm, Billings, Mont., for plaintiff.

1. Plaintiff provided a defense under reservation of rights and settled the underlying case for $27,500. Plaintiff paid $17,500 of the settlement and the Bank paid $10,000 of the settlement, the amount of the deductible under the insurance policies at issue. Plaintiff contends that the "duty to defend" issue is moot since it provided a defense. Therefore, the Court will address only the issue of whether plaintiff has a duty to

Steven J. Lehman, Crowley Law Firm, Billings, Mont., for defendants.

## OPINION AND ORDER

BATTIN, Chief Judge.

Presently pending before the Court are cross-motions for summary judgment. For reasons stated below, plaintiff's motion is denied and defendants' motion is granted.

## FACTS AND CONTENTIONS

On December 30, 1985, plaintiff filed an amended complaint for declaratory judgment. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. By its complaint, plaintiff seeks a declaration that plaintiff is not entitled to indemnify or further defend[1] defendants First Interstate Bancsystems of Montana, Inc., d/b/a First Interstate Bank of Colstrip (Bank), and Keith Brighton in a state court action.[2] On January 25, 1985, the Bank and Brighton were named as defendants in a law suit, *Terri Schroeder v. First Interstate Bank of Colstrip and Keith Brighton, individually and as President of First Interstate Bank of Colstrip*, filed in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Rosebud. The Bank has liability insurance through policies issued by plaintiff.

Plaintiff contends that the claims asserted against defendants in the state court action do not fall within the insuring provisions of the insurance policies or are excluded from coverage. Defendants argue that there has been an "occurrence" under the policies and that the policies contain ambiguities which lead a reasonable person to believe that damages such as those alleged in the state court action are covered.

indemnify defendants for any liability incurred or whether defendants are obligated to reimburse plaintiff for $17,500.

2. Defendant Continental Casualty Insurance Company a/k/a American Casualty Company was dismissed with prejudice on January 27, 1987.

## DISCUSSION

In diversity actions, the substantive rights and obligations of the parties are governed by the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Insurance Co. v. Weiner*, 606 F.2d 864 (9th Cir.1979). This Court, therefore, must look to the substantive law of Montana. The Montana Supreme Court has not decided whether an insurance contract, like the one before the Court, indemnifies an insured against a wrongful termination lawsuit. Consequently, this Court must resolve the question as it believes the Montana Supreme Court would resolve it.

Under Montana law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy." Mont.Code Ann. § 33–15–316. The interpretation of the contract's language, and whether it is ambiguous, is a question to be determined in the first instance by the Court. The initial inquiry is whether the contract is reasonably subject to two different interpretations. Where language of an insurance policy admits of only one meaning, there is no basis for interpretation of the policy coverage under the guise of ambiguity. The Court must determine whether, as a matter of law, an ambiguity exists in the language of the insurance contract now before the Court.

Defendants were covered by a General Comprehensive Liability Insurance Policy with a Broad Form Endorsement (Exhibit 2) as well as an Excess-Umbrella Policy (Exhibit 3). Plaintiff contends that the insurance policies unambiguously exclude coverage for damages alleged in Schroeder's amended complaint. The Court must compare the policy language with the allegations of the Schroeder complaint.

Coverage under the Excess-Umbrella Policy extends to loss "on account of:

(a) personal injuries, including death at any time resulting therefrom,

(b) property damage,

(c) advertising liability,

caused by or arising out of each occurrence happening anywhere during the policy period." "Occurrence" is defined as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period." "Personal injury" means, *inter alia:* "(a) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; ...." The policy does not apply "(a) to any obligation for which the Insured or any company as its insurer may be held liable under any workmen's compensation, occupational disease, unemployment compensation, disability benefits law, or any similar law...."

Defendants seek coverage under the insurance policies for liability occasioned by settlement of the underlying tort action. Count I of Schroeder's amended complaint (Ex. 1) alleged, *inter alia*, the following:

1. Plaintiff was employed by defendants First Interstate Bank of Colstrip and Keith Brighton from September 10, 1984, through November 29, 1984. ¶ IV.

2. The Bank acted negligently in appointing plaintiff's supervisor, who dealt unfairly with plaintiff and accused plaintiff of having a bad attitude. ¶ VIII.

3. The Bank, "in bad faith", failed to deal fairly with plaintiff to inform her of attitude deficiencies. ¶¶ IX and X.

4. "By reason of Plaintiff's satisfactory and competent service in performance of her duties, there was an implied promise that Plaintiff's employment would continue, that she would not be terminated or discharged except for just cause, she could expect good faith and fair dealing from her employer, and she could continue employment indefinitely so long as she performed satisfactorily and obeyed all reasonable and lawful rules, regulations, and directions of her employer." ¶ XIV.

5. On November 29, 1984, "Defendant Keith Brighton, acting in a malicious, oppressive, and negligent manner, and in vio-

lation of an employer's duty of good faith and fair dealing, fired Plaintiff summarily and without just cause." ¶ XVII.

6. Defendants wrongfully inserted defamatory and erroneous matters into plaintiff's personnel file. ¶ XIX.

Count II alleged that defendant Brighton used an evaluation form to punish plaintiff for disagreements plaintiff had with Brighton's wife, ¶¶ VI, VII, VIII, XI, and that such action was wrongful and negligent. ¶¶ IX, XII. Both counts sought damages for "loss of compensation, loss of future earning capacity, physical and emotional stress and humiliation, loss of benefits, and loss of work-life earnings."

The Court concludes that the policies do not unambiguously exclude coverage for damages such as those alleged in Schroeder's amended complaint. In finding ambiguity, the Court must now interpret the policies and decide whether they indemnify defendants against liability stemming from allegations in Schroeder's amended complaint. The policies will be strictly construed against the insurer, and the Court must adopt a meaning which favors insurance coverage. *U.S.F. & G. v. Rae Volunteer Fire Company,* —— Mont. ——, 688 P.2d 1246 (1984).

An occurrence under the policy includes a happening or event. The amended complaint alleges a series of events leading to plaintiff's termination, which was a happening. Plaintiff has narrowly defined "occurrence" as an accident while the policy language defines "occurrence" more broadly. *Cf. St. Paul Fire & Marine Insurance Co. v. Superior Court (Yuba County),* 161 Cal.App.3d 1199, 1202, 208 Cal.Rptr. 5, 7 (1984) (under California law, insurer not obligated to defend its insured in an action for intentional and wrongful termination of employment where policy extended coverage only for claims "resulting from an accidental event"). Coverage under the umbrella policy extends to personal injuries, property damage and advertising liability. "Personal injury" includes bodily injury, sickness, disease, disability, shock, mental anguish and mental injury.[3] Plaintiff alleged that she suffered physical and emotional stress and humiliation. In her deposition excerpt, plaintiff denied suffering from physical ailments but indicated that she suffered emotional stress and humiliation, Exh. 4, which would be covered as mental anguish or injury.

The policies may be reasonably interpreted to provide coverage for an occurrence such as wrongful termination and for personal injury such as emotional stress and humiliation. The crux of the case, then, is whether the termination unexpectedly or unintentionally resulted in personal injury, property damage or advertising liability. The answer turns on whether defendants intentionally caused plaintiff's injuries.

The complaint did not expressly allege intentional and deliberate conduct. In fact, Schroeder alleged, *inter alia*, that defendants acted negligently in terminating her. *Cf. St. Paul Mercury Insurance Company v. Ralee Engineering Co.,* 804 F.2d 520, 522 (9th Cir.1986) (no potential for damages based upon negligence where plain language of complaint alleged intentional and deliberate conduct). Under Montana law, negligence has been recognized to be a proper basis for recovery in wrongful termination cases. *Crenshaw v. Bozeman Deaconess Hospital,* —— Mont. ——, 693 P.2d 487 (1984); *Flanigan v. Prudential Federal Savings,* —— Mont. ——, 720 P.2d 257 (1986). Thus, Schroeder's complaint provided the potential for damages based upon negligence. Those allegations cannot be ignored because negligent termination is a distinct theory under Montana law. Such negligence would necessarily be unintentional and any liability would be covered by the policies. Although the settlement does not distinguish the grounds for settlement, Schroeder's complaint provided the potential for damages based on negligence and plaintiff would have a duty to indemnify defendants.

**3.** *Cf. Aetna Casualty & Surety Co. v. First Security Bank of Bozeman,* 662 F.Supp. 1126 (D.Mont. 1987) (coverage under the liability insurance policy extended only to bodily injury or property damage).

Furthermore, there is language in the umbrella policy which makes it reasonable to assume that liability resulting from wrongful termination is covered. Although the policies do not provide coverage for intentional injuries, the Excess-Umbrella Policy, in the definition of "personal injury", covers liability resulting from false arrest, detention, defamation, malicious prosecution and wrongful entry or eviction. Certainly, there is an intent to commit the acts of arrest, detention, publication, prosecution and entry. However, there is no intent to cause injuries because of the acts. Compensation for any injuries arises from a determination, after the fact, that the action was false, defamatory, malicious or wrongful. Likewise, in wrongful termination, there is an intent to terminate but injuries are not compensable unless a Court or a jury establishes that the termination was wrongful.

The law of wrongful termination in Montana is uncertain. *Nicholson v. United Pacific Insurance Company,* —— Mont. ——, 710 P.2d 1342 (1986); Note, *Survey: Good Faith and Fair Dealing: Analysis of Recent Cases,* 48 Mont.Law Review 193 (1987). An employer may not know that his or her conduct is wrongful until liability is established. Because the purpose of liability insurance is to protect against risk, this Court should not deny employers the protection of insurance coverage that they have purchased. *See First Bank v. Transamerica Insurance Company,* —— Mont. ——, 679 P.2d 1217 (1984) (public policy does not preclude insurance coverage for punitive damages). It is reasonable to assume that wrongful termination is a personal injury akin to false arrest, malicious prosecution or wrongful entry. The injuries are unintentional, although there is an intent to do the act itself. Thus, wrongful termination is reasonably covered as a personal injury under the Excess-Umbrella Policy.

Finally, in *Transamerica Insurance Company v. Royle,* 202 Mont. 173, 180, 656 P.2d 820, 824 (1983), the Montana Supreme Court recognized the "reasonable expectations" doctrine, which entitled an insured to all the coverage he may reasonably expect to be provided under the policy. That ex-

pectation is defeated only by "an unequivocally conspicuous, plain and clear manifestation of the [insurer's] intent to exclude coverage. (Footnote omitted)." *National Farmers Union Property and Casualty Co. v. Swanson,* CV 84–259–GF–PGH, slip op. at 6 (D.Mont., April 8, 1987). The policies in this case are ambiguous. There is no clear manifestation of the plaintiff's intent to exclude coverage for liability occasioned by a wrongful termination suit. Defendants, in paying premiums for excess umbrella coverage, which covered personal injuries occasioned by intentional torts, could reasonably expect to be provided coverage under the policy for a wrongful termination suit like Schroeder's.

■ Plaintiff argues that the exclusion for liability under "workmen's compensation, occupational disease, unemployment compensation, disability benefits law, or any similar law" applies under the facts of this case. The phrase "or any similar law" is ambiguous. A law similar to those listed would be statutory and employment-related. Wrongful termination is a common law tort, however, and not part of a statutory scheme. In fact, unlike bad faith actions in insurance, banking and commercial relationships, where liability is based upon violations of statutes, the tort, as applied to the employment relationship, has no statutory underpinnings. Hopkins & Robinson, *Employment At-Will, Wrongful Discharge, and the Covenant of Good Faith and Fair Dealing in Montana, Past, Present, and Future,* 46 Montana Law Review 1, 5 (1985). The tort does not occur until the employment is terminated. Thus, Schroeder could not have been injured in the course and scope of employment. *See Flanigan v. Prudential Federal Savings & Loan Association,* —— Mont. ——, 720 P.2d 257, 263 (1986). The tort of wrongful termination simply cannot be defined as a "similar law."

## CONCLUSION

Under the facts of this case, considering the language of the Excess-Umbrella Policy in force and effect as well as the allega-

tions of Schroeder's complaint, the Court concludes that plaintiff has a duty to indemnify defendants for liability incurred as a result of the underlying wrongful termination suit. Schroeder suffered personal injury caused by, *inter alia*, defendants' negligence, and any intentional act of defendants caused unintended injuries, which were covered by the policy language defining "personal injury." Therefore,

IT IS ORDERED that plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted.

The Clerk is directed to enter judgment in favor of defendants and against plaintiff.

The Clerk is further directed to notify counsel for the respective parties of the making of this Order.