NO. 93-212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

TRUSTEES, MISSOULA COUNTY SCHOOL
DISTRICT NO. 1,

      Plaintiff and Respondent,

   vs.

PACIFIC EMPLOYER'S INSURANCE COMPANY,
a corporation,

      Defendant and Appellant,

   and

WESTERN STATES INSURANCE AGENCY, INC.,
a Montana corporation,

      Defendant and Respondent.

FILED

DEC 2 8 1993

*Ed Smith*
CLERK OF SUPREME COURT.
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Shelton C. Williams, Richard Ranney; Williams &
          Ranney, Missoula, Montana

      For Respondent:

          Brian L. Delaney: Mulroney, Delaney & Scott,
          Missoula, Montana

          Patrick Frank, Esq.: Worden, Thane & Haines,
          Missoula, Montana

          Submitted on Briefs: November 18, 1993

                  Decided: December 28, 1993

Filed:

_____
           Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arose in the Fourth Judicial District, State of Montana, in and for the County of Missoula, the Honorable Douglas Harkin presiding. We affirm in part and remand.

This Court, in the case of Trustees, Missoula County Sch. Dist. No. 1 v. Anderson (1988), 232 Mont. 501, 757 P.2d 1315, set forth the background facts of this case. Therein we found that a teacher, Carol Anderson (Anderson), was improperly dismissed for incompetence based on poor performance following four interviews upon her return to teaching following a sabbatical leave. The opinion of this Court reversed the district court's decision which set aside the findings of fact and conclusions of law of the State Superintendent and the County Superintendent. We directed the court to reinstate the decision of the State and County Superintendent.

One year after this Court returned the case to the District Court to implement our decision, Anderson and the Trustees entered into a settlement agreement and a release. That settlement agreement involved payments to Anderson as follows:

> 2. <u>Payments.</u> In consideration of the Release set forth above[,] the District hereby agrees to pay a sum totaling $81,585.07 as negotiated and compromised by Anderson and the District which is the sum of the following amounts:

| | |
|---|---|
| Total Wet Annual Income | $64,473.74 |
| Total Interest | $12,023.81 |
| Total Medical | $ 5,387.81 |

> Receipt of $81,885.36 is expressly acknowledged.

The District further agrees to pay the interest

2

required by [the Teachers' Retirement System] in addition to the [Teachers' Retirement System] contribution.

The District agrees to pay the federal income tax, state income tax and FICA deducted from gross salary to the appropriate state and federal agencies.

With these facts, we now consider the problem of who is going to pay the settlement.

In 1984, the Trustees of the Missoula School District No. 1 (Trustees), purchased a School Professional Legal Liability Insurance Policy from an insurance representative of Western States Insurance Agency, Inc. (Western States). The policy came through Pacific Employers Insurance Company (Pacific): the effective dates were from December 1, 1984 to December 1, 1987. Prior to purchasing the policy, and upon inquiry whether there were any lawsuits outstanding, a trustee informed the Western States representative that a "tenured teacher's [Anderson] dismissal is being challenged at this time through the regular channels, now in the hands of the County State Superintendent of Schools."

Upon being presented the above amounts, Pacific denied coverage of the claims on the grounds that the policy provided an exclusion for claims made against the insured for "any amounts due under the terms of any contractual obligation. . . ." Pacific characterized the payment agreement between the School District and Anderson as one arising out of a "contractual obligation." The Trustees argue that the School District's settlement with the dismissed teacher was based upon negligent firing and, therefore, the clause which provides for coverage for errors, omissions, and claims made "(a) by reason of any act, error, or omission in

3

services rendered in the discharge of the School District . . . ."
applies.

Several issues are set forth; two by the respondent Trustees:

1. Whether the District Court erred by holding that the "contract **exclusion**" provision of the insurance agreement, authored by Pacific, was not applicable to preclude coverage under the insurance agreement.

2. Whether the District Court's Memorandum and Order of January 12, 1993, (as opposed to its February 19, 1993, entry of Rule 54(b) Judgment) has any effect on the viability of the third and fourth affirmative defenses raised by Pacific's answer.

Western States responds to the second issue as set forth by the appellants as:

3. Did the District Court properly grant partial summary judgment to the Trustees on the "contract exclusion" issue without addressing several coverage defenses set forth in Pacific's answer?

Plaintiff Trustees filed an action in District Court naming as defendants Pacific and Western States. The Trustees alleged that they were entitled to declaratory relief and to the benefits of coverage under a Pacific insurance policy issued to the school district. Pacific denied coverage for sums the Trustees paid to Carol Anderson after she successfully appealed her dismissal as a tenured teacher. The Trustees also alleged in the amended complaint that Western States had been negligent in advising them to purchase **the Pacific** policy.

The parties filed cross-motions for partial summary judgment addressing whether the "contract exclusion" in Pacific's policy precluded coverage for sums that the Trustees paid to Anderson. The District Court granted partial summary judgment to the

4

Trustees, ruling that the contract exclusion did not apply and that Pacific had breached its obligation to provide coverage under the insurance policy. Pacific and Western States were represented by the same counsel during the summary judgment proceedings and thereafter separate counsel represented Western States which aligned itself with the Trustees for the purpose of this appeal.

This Court uses the same standard in reviewing a denial of summary judgment as the District Court used in denying the motion. Frazier **Educ. Ass'n,** MEA/FEA v. Board of Trustees, Valley County Elementary Sch. Dist. No. 2 **(1993),** 256 Mont. 223, 225, 846 **P.2d** 267, 269; see also Graham v. Montana State University **(1988),** 235 Mont. 284, 287, 767 **P.2d** 301, 303. In order for summary judgment to issue, and to be affirmed on appeal, there can be no "genuine issue as to all facts deemed material in light of the substantive principles that entitle [the movant] to a judgment as a matter of **law."** Cereck v. Albertson's Inc. **(1981),** 195 Mont. 409, 411, 637 **P.2d** 509, 511; and Rule 56(c), M.R.Civ.P.

I

Whether the District Court erred by holding that the "contract exclusion" provision of the insurance agreement, authored by Pacific, was not applicable to preclude coverage under the insurance agreement.

In the case before us, there is no factual dispute which is material to the determination of the contract exclusion issue. Based on the briefs that have been submitted to the District Court and to this Court, the parties agree that Pacific's exclusion must be construed in the context of Anderson's appeal of her dismissal.

5

While the parties may supply differing interpretations of the contextual facts, the facts themselves are undisputed. Thus the real issue on appeal is whether the District Court correctly determined, as a matter of law, that the exclusion did not apply, which entitled the Trustees to partial summary judgment.

In reaching the principal issue in this appeal, we must first decide how to characterize Anderson's challenge to her dismissal. Appellant Pacific repeatedly characterizes the challenge as one for breach of contract in order to bring it within the ambit of the contract exclusion. Western States argues that Pacific misperceives the nature of Anderson's claim. "1. Montana authority establishes that Carol Anderson's claim was for dismissal without good cause in violation of her rights under section 20-4-207, M.C.A."

Montana school laws generally embody a legislative effort to balance the rights of teachers with those of trustees. Anderson, 757 P.2d at 1318; and Massey v. Argenbright (1984), 211 Mont. 331, 336, 683 P.2d 1332, 1334. The rights of tenured teachers are treated with solicitude because "tenure is a substantial, valuable, and beneficial right which cannot be taken away except for good cause." Anderson, 757 P.2d at 1318.

Our cases have also looked to the obligation and rights of school trustees in maintaining the integrity of their schools. Anderson 757 P.2d at 1318. Article X, § 8 of the Montana Constitution provides that "[t]he supervision and control of schools in each school district shall be vested in a board of

6

trustees . . . ." Section 20-3-324, MCA, enumerates the specific powers and duties of the trustees, including the power to employ and to dismiss personnel. We have held that trustees must exercise discretion in deciding whom they will employ and whom they will dismiss. See Kelsey v. School Dist. No. 25 (1929), 84 Mont. 453, 458, 276 P. 26, 26.

Section 20-4-207, MCA (1983), which governed the dismissal of Anderson, reflected the tension between the competing rights of teachers and trustees. The statute provided:

> (1) The trustees of any district may dismiss a teacher before the expiration of his employment contract for immorality, unfitness, incompetence, or violation of the adopted policies of such trustees.
>
> (2) Any teacher who has been dismissed may in writing within 10 days appeal such dismissal to the county superintendent. Following such appeal a hearing shall be held within 10 days. If the county superintendent, after a hearing, determines that the dismissal by the trustees was made without good cause, he shall order the trustees to reinstate such teacher and to compensate such teacher at his contract amount for the time lost during the pending of the appeal.

This statute covers the appellate procedure and established the measure of Anderson's damages and is conceded by Pacific. However, Pacific insists that her claim was "strictly and solely a claim for breach of the employment contract" and that the damages she received were for breach of that contract. As noted previously, Western States disagrees.

This Court has distinguished the remedial process that is afforded a teacher who is dismissed while under contract from an action for breach of contract. Kelsey, 276 P. at 26-27: see also Wyatt v. Sch. Dist. No. 104 (1966), 148 Mont. 83, 89, 417 P.2d 221,

7

These cases show the differences between a statutory appeal of a dismissal and an action for breach of contract, noting that a teacher is not free to choose between an appeal and an action for contractual damages: the proceedings are not interchangeable. In the absence of exceptional circumstances a teacher must exhaust his or her administrative remedies under Montana school law. See Throssell v. Board of Trustees of Gallatin County Sch. Dist. No. 7 (1988), 232 Mont. 497, 499, 757 P.2d 348, 349-50.

However, under Montana law, the remedies that are available in a statutory appeal of dismissal are not necessarily the same as those available in a breach of contract action. Section 20-4-207(2), MCA (1983), limits the relief that is available to a wrongfully dismissed teacher to reinstatement and to compensation "at his contract amount for the time lost during the pending of the appeal."

The decision of this Court supports characterizing Anderson's proceedings as one vindicating her statutory rights as a teacher rather than a breach of contract case. As noted in Western States's brief an analogy may be drawn with a proceeding to vindicate the rights of a protected person who has suffered a discriminatory termination of employment. See Title VII, Civil Rights Act (1964), 42 U.S.C. § 2000e-2(a)(1); and the Montana Human Rights Act, § 49-2-303(1)(a), MCA. Both types of proceedings are originally consigned to administrative agencies by statute and with limited exceptions, exhaustion is required. Both kinds of proceedings feature remedies prescribed by statute, which may

8

include reinstatement and compensation or back pay. The fact that compensation or back pay is calculated by reference to a contract amount does not convert the proceeding from one for violation of statute to one for breach of contract.

As previously noted, the undisputed facts here establish that Anderson's claim was for dismissal without good cause in violation of her statutory rights. Her claim establishes that she was dismissed without good cause rather than a breach of contract. Here all the proceedings, both the administrative appeals, and both district court and Supreme Court decisions, are consistent with characterizing Anderson's claim as one for a violation of the Montana statute that protects teachers under a contract from dismissal without good cause. Section 20-4-207, MCA (1983). We find that neither the law nor the facts support Pacific's assertion that Anderson's claim was "strictly and solely a claim for breach of her employment contract."

As a general rule, an insurance company must look to the allegations of a complaint to determine if a loss is covered. "Coverage is based upon the act [or conduct that] giv[es] rise to the claims, not necessarily upon the language of the complaint" or other pleading that initiates a proceeding. New Hampshire Ins. Group v. Strecker (1990), 244 Mont. 478, 482, 798 P.2d 130, 132; see Burns v. Underwriters Adjusting Co. (1988), 234 Mont. 508, 510, 765 P.2d 712, 713.

Here, Anderson initiated an administrative proceeding by submitting a form "appeal" to the County Superintendent of Schools,

9

designating § 20-4-207, MCA, as the basis for her appeal. Therefore, § 20-4-207, MCA, must be read into her appeal. The statute and interpretive precedent establish that although trustees may dismiss a teacher who is under contract, they may not do so without good cause. Johnson v. Beaverhead County High Sch. Dist. (1989), 236 Mont. 532, 534, 771 P.2d 137, 138; Anderson, 757 P.2d at 1318; and Trustees, Lincoln County Sch. Dist. No. 13 v. Holden (1988), 231 Mont. 491, 495-96, 754 P.2d 506, 509.

The conduct that gave rise to Anderson's claim was an omission--failure of the Trustees to consider and to weigh all of the available evidence before dismissing her. The omission constituted a violation of the Trustees' statutory obligation to dismiss only for good cause. At the same time, the omission constituted a violation of Anderson's statutory rights. She filed her appeal to vindicate those rights and to secure reinstatement to her teaching position. The record demonstrates that she did not explicitly seek compensation in the immediate aftermath of her dismissal.

Under the insurance agreement, Pacific promised to pay all sums which the Trustees became legally obligated to pay as damages as a result of claims first made during the policy period "by reason of any act, error, or omission in services rendered in the discharge of School District duties. . . . " Clearly, the Trustees became obligated to pay Anderson damages after this Court reinstated the decisions of the State and County Superintendents. There is also no question that Anderson's claim arose by reason of

10

an omission in services rendered in the discharge of the Trustees' duties. Thus, for purposes of the issue before this Court, Pacific's insurance agreement provided coverage for the conduct that gave rise to Anderson's claim.

While Pacific contends that the damages Anderson "sought and received were 'for . . . amounts due [her] under the terms of [the School District's] contractual obligation' with her," the exclusion provides that the claim must be for amounts due under the terms of a contractual obligation. Western States argues that Pacific misperceives the nature of Anderson's claim and that Pacific's position is untenable if her claim is viewed as anything other than one for breach of contract. We agree.

The facts of this case indicate that Anderson was discharged from her employment from the School District in good faith, but this Court later found that she should not have been. The School District was not acting maliciously in discharging her, as it felt that there were sufficient grounds. As it turned out it was a mistake, but in this case, and many other wrongful discharge cases where a negligent termination occurred, they did not know what they had done was negligent until it was finally determined to be so by a higher court. Under these circumstances, the School District should not be denied the coverage which it had bargained for.

A very similar situation is presented in the case of United Pacific Ins. Co. v. First Interstate Bancsystems (D. Mont. 1987), 664 F. Supp. 1390, where there was an insurance coverage dispute involving a wrongful termination claim. There, in discussing the

11

unique nature of the wrongful discharge claim, the court stated:

> Likewise, in wrongful termination, there is an intent to terminate but injuries are not compensable unless a Court or a jury establishes that the termination was wrongful.
>
> . . .
>
> An employer may not know that his or her conduct is wrongful until liability is established. Because the purpose of liability insurance is to protect against risk, this Court should not deny employers the protection of insurance coverage . . . .

United Pacific, 664 **F.Supp.** at 1394.

We note that in the United Pacific case, the claim for damages was for loss of compensation, loss of future earning capacity, physical and emotional stress and humiliation, loss of benefits, and loss of work life earnings. While the claim obviously involved damages which were tied to the employment contract, nowhere in the United Pacific decision is the claim stated to be a claim arising out of a contractual obligation. There, the court was clearly of the opinion that the claim was for **tortious** wrongful termination and for personal injury such as emotional stress and humiliation. United Pacific, 664 **F.Supp.** at 1394.

As is the case here, in United Pacific, First Interstate was seeking reimbursement from its insurer related to a settlement of a wrongful termination claim. In this regard, the court noted:

> Although the settlement does not distinguish the grounds for settlement, Schroeder's complaint provided the potential for damages based on negligence and plaintiff would have a duty to indemnify defendants.

United Pacific, 664 **F.Supp.** at 1393.

In this case, as in United Pacific, the settlement document does not specifically identify the grounds for settlement in terms

12

of theories of liability (although virtually all of the claims released by Anderson sound in tort). At a minimum, **"the** potential" for damages based on pure negligence, even though subject to a specific statutory remedy, was there. Thus, there is a clear obligation in this case for Pacific to cover the loss, subject to other defenses which were not at issue here.

It is obvious that the contract exclusion portion of the insurance agreement is ambiguous as applied in this case. Although the exclusion had its purpose, and legitimately could fulfill its purpose in a case where the facts were supportive of that position--this is not one of them. The ambiguity of the exclusionary provision in an insurance agreement should be construed against the facts of the matter presented. Considering the facts in this instance, the District Court's decision clearly does not have the effect of "eliminating the contract exclusion" from the policy entirely, as alleged by Pacific. In fact, nothing could be further from the case.

From the statement of the facts, the insurance agreement claims to provide a wide range of coverage for negligent acts, errors, or omissions rendered in the discharge of School District duties. It then goes on to exclude coverage for **"any** amounts due under the terms of any contractual obligation." As we have noted before, here, the Anderson obligation was not due under the terms of a contractual obligation. In this case, a contractual obligation exclusion is most certainly unclear. It purportedly applies without limitation to construction and demolition contracts

13

and purportedly to other contractual obligations, but as to non-construction or non-demolition contracts, the insurance company agrees to cover fees, costs, etc., resulting from the School District's failure to perform or breach of contract. Nowhere in this exclusion is it apparent that the exclusion applies in anything other than contracts the School District entered into with third parties outside of the School District for goods and services. There is no specific mention in the exclusion clause for internal contractual obligations within the School District, or more importantly of liability by termination of employment.

If it was the intent of the policy drafters to exclude coverage related to negligence, or even intentional wrongful termination of employment, appropriate language could have been inserted. The policy was very carefully drafted and, as such, the fact that an incident is not specifically excluded, conclusively demonstrates that it was not intended to be. Here the ambiguity was created by the policy and must be construed against the company as a matter of law. The District Court very acutely and properly noted:

> The agreement does not address issues such as those presented in this case where damages sustained are a result of errors made by school officials in terminating a contract. Therefore, the terms of the insurance contract need to be construed according to the entirety of its terms and conditions as set forth in the policy. See, § 33-15-316, M.C.A.; and United Pacific . . . . A particular clause of a[n insurance] contract must always be subordinate to the contract's general intent. § 28-3-307, M.C.A.
>
> The general intent of the policy in the present case is to insure the School District from liability for errors

14

> in the discharge of their duties. The exclusions or words of limitations in the policy must be construed against the insurer: <u>Bauer Ranch v. Mountain West Farm Bureau Mutual Insurance</u>, (1985), 215 Mont. 153, 695 P.2d 1307, 1309, as an insured is entitled to all the coverage he may "reasonably expect" to be provided in a policy under the "reasonable expectation" doctrine subscribed to in this state. [Citation omitted.]

See also, Farmers Union Mut. Ins. Co. v. Oakland (1992), 251 Mont. 352, 356-57, 825 P.2d 554, 556-67; and Bauer Ranch v. Mountain West Farm Bureau Mut. Ins. Co. (1985), 215 Mont. 153, 156, 695 P.2d 1307, 1309.

## II

> Whether the District Court's Memorandum and Order of January 12, 1993, (as opposed to its February 19, 1993, entry of Rule 54(b) Judgment) has any effect on the viability of the third and fourth affirmative defenses raised by Pacific's answer.

Last, but not least, the question of the viability of Pacific's third and fourth defenses has been raised for discussion. The District Court's Rule 54(b) Judgment indicated that in ruling on the merits of the partial summary judgment motions which were presented through its memorandum and order of January 12, 1993, "there was coverage for the Plaintiffs' [sic] losses under the subject insuring agreement." Both the School District and Western States agree with Pacific that the viability of its third and fourth affirmative defenses have not yet been subject to a court determination. The solution to this problem can be resolved by holding that a Rule 54(b) judgment is, in essence, the "judgment to be appealed from here." The practical effect of the Rule 54(b) judgment is to certify the District Court Judge's previous memorandum and order adjudicating the partial summary judgment

15

motion of January 12, 1993, as a "final order." We hold that this is the *'judgment appealed from." We find that the District Court reached the proper result in its memorandum and order of January 12, and in so doing we hold that the contract exclusion had no effect on the coverage under the insurance policy as construed against the background history and the underlying facts of the settlement of Anderson's claim.

The District Court is affirmed on issue one and the case is remanded to conform to this opinion as to the third and fourth affirmative defenses.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16

I respectfully dissent.

This is a difficult case. Notwithstanding, I believe that the more persuasive reasoning supports the position of Pacific Employers Insurance Company (Pacific), and for that reason I would reverse.

The opinion of the Court holds that Carol Anderson (Anderson) was "vindicating" her statutory rights by making a claim for dismissal without good cause in violation of § 20-4-207, MCA. That conclusion ignores the plain language of the statute which leads inevitably to the conclusion that, without a breach of her employment contract, Anderson would have no claim against the Trustees of Missoula County School District No. 1 (School District), nor would she have any rights, statutory or otherwise, to vindicate.

The statute provides in pertinent part that:

> The trustees of any district may dismiss a teacher <u>before the exviration of his emvlovment contract</u> for immorality, unfitness, incompetence, or violation of the adopted policies of such trustees. (emphasis added)

Section 20-4-207(1), MCA. The statute does not provide a right against wrongful dismissal separate and apart from the underlying contract. The statute presupposes that there is an employment contract in the first place, and it is the breach of that contract, by firing the teacher for other than good cause -- immorality, unfitness, incompetence or violation of adopted policies -- that gives rise to a violation of the statute. For that reason, I cannot conclude that Anderson's claim against the School District was anything but for sums due under her contract. Simply put, she

17

wanted the benefit of her contract. She wanted employment, and she wanted to be paid for her employment in accordance with the terms of her contract.

Here, the exclusion in the insurance policy applies to any claims made against the School District for **"any** amounts due, under the terms of any contractual obligation." While Anderson argues that she filed her claim to vindicate her statutory rights, thereby avoiding the exclusionary language in the policy, the exclusion does not limit itself to excluding claims for damages only if presented under a breach of contra&<u>theory</u>. The exclusion applies if the claimed damages are in fact "amounts due under the terms of any contractual obligation," regardless of how the theory of liability is characterized.

Anderson's rights to employment, compensation and fringe benefits did not arise from the statute. Those rights arose from the contract obligations assumed by the parties, the breach of which gave rise to the very damages claimed by Anderson and the very damages paid by the School District.

In actuality, Anderson was not vindicating her statutory rights: she had none apart from her contract. She was, in truth, vindicating her contract rights under her teacher's contract and the collective bargaining agreement which incorporated the statute that allowed the School District to dismiss her if she was found to be immoral, unfit, incompetent, or if she violated the trustees' adopted policies. The only rights Anderson had were those arising out of her contract with the School District. The fact that this **particular** contract was subject to a special statute which **required**

18

administrative appeals as opposed to court action as the means of enforcement does not change the essence of the claim itself -- one arising out of the contact.

As pointed out in the Court's opinion, § 20-4-207(5), MCA, limits the relief that is available to a wrongfully-dismissed teacher to reinstatement and compensation "at [her] contract amount for the time lost during the pending of the appeal." The statute itself makes clear that the amounts due Anderson were amounts due under her contractual obligation with the School District. Here, Anderson received a settlement which included amounts exactly equal to the types and amounts of compensation that she should have received under her contract, with interest.

She received her salary, and she received the medical benefits she would have received under her health insurance policy with the School District. In addition, the School District contributed to the Teachers' Retirement System, with interest, and paid the federal and state income tax and FICA which would have been deducted from Anderson's gross salary. The settlement exactly matched what Anderson would have received under her contract, with interest. The settlement agreement and release broke out the amounts paid in precisely the manner that those amounts would have been paid had the School District not breached its agreement with Anderson and had it not wrongfully terminated her employment.

These amounts were due because of Anderson's employment contract which the School District breached when it discharged Anderson during the term of her contract without good cause. Clearly, even if this action is characterized as one where Anderson

19

was "vindicating her statutory rights," the amounts the School District paid Anderson were precisely the "amounts due under the terms of [her] contractual obligation,*' and are thus excluded from coverage by the terms of the policy with Pacific.

Effectively, this Court has turned a simple breach of contract action, for which there is no insurance coverage, into a tort case for which there is, under the guise of the teacher "vindicating her statutory rights." This is a breach of contract case and the amounts due and paid arose under the contractual obligation of the School District to Anderson and are, therefore, excluded from coverage under the insurance policy.

Similarly, I cannot agree with the opinion of the Court which characterizes the policy contract exclusion as "ambiguous." The contract exclusion, while broad, is very specific -- it applies to amounts due under <u>any contractual obligation</u>. There are no exceptions to this exclusion. There is no language in the exclusion that limits its application to only third-party contracts, to construction or other special-type contracts, to contracts under which an obligation of indemnity is assumed, or to "internal contractual obligations." This Court reads into the exclusion limiting language, by the expedient of finding that the limitations are not there. That turns the rules of construction upside down. I do not believe that the policy contract exclusion at issue here even requires construction, much less that it be construed against Pacific on the theory that it is ambiguous. The exclusion may be broad; it is not, however, ambiguous. When the language of a contract is clear and unambiguous, as it is in this

20

case, the contract does not require the application of the rules of construction, and it is this Court's duty to enforce the contract as made by the parties. Keller v. Dooling (1991), 248 Mont. 535, 539, 813 P.2d 437, 440.

Finally, the potential for mischief which will be generated by the Court's opinion is disturbing, to say the least. Under this opinion, school districts with similar insurance policies will have free rein to discharge tenured teachers under contract, knowing that their liability insurer will have to pay all attorney's fees to defend the administrative appeals, and will then have to pay all compensation and fringe benefits ultimately awarded if it turns out that the termination was not for good cause. This is a win-win, no-risk situation for the school district: there is simply no incentive not to roll the dice and fire teachers where good cause might be questionable or, perhaps, lacking altogether.

The School District can breach an employment contract by firing the teacher without regard to whether there is good cause or not. If the teacher loses the administrative appeal, then the teacher is gone and the school district does not have to pay salary and benefits from and after termination. If the teacher wins the administrative appeal, then the teacher is gone or reinstated and the school district does not have to pay salary and benefits from and after termination or, at least from and after termination through the point of reinstatement.

If, as the Court points out, citing United Pacific Insurance co. v. First Interstate Bancsystems of Montana, Inc. (D. Mont. 1987), 664 F. Supp. 1390, 1394, "the purpose of liability insurance

21

is to protect against **risk**," I am hard pressed to discover where, under the facts of this case, the School District assumed or incurred any risk at all. It paid in settlement <u>exactly</u> what it would have paid (interest excluded) had it not breached Anderson's employment agreement and had it, instead, continued her employment. Pacific is now required to indemnify the School District for the costs, attorney's fees and damages associated with the improper termination. And, the School District got rid of an unwanted teacher. There is no risk in that for the School District!

Worse, that scenario certainly does not provide any incentive to a school board of trustees and to a school administration to insure that there is good cause before terminating a teacher's employment. In fact, quite the opposite is true. I cannot believe that it was realistically in the contemplation of either the insured or insurer that the referenced policy exclusion would be interpreted to allow such an absurd result. I do suspect, however, that there may be a few teachers in shaky relationships with their boards and administrations who should now begin looking over their shoulders.

For the foregoing reasons, I would reverse the District Court and hold that the contract exclusion bars the School District's claim.

_____
                            Justice

Justice Karla M. Gray concurs in the foregoing dissent.

_____
                            Justice

22

Justice Fred J. Weber concurs in the foregoing dissent with the exception that he does not concur in the last four paragraphs of the dissent with regard to the potential for mischief which may be generated by the Court's opinion.

_____
                Justice