132 F.3d 526
 40 Fed.R.Serv.3d 233, 28 Envtl. L. Rep. 20,448,
97 Cal. Daily Op. Serv. 9608,
97 Daily Journal D.A.R. 15,387
 ENRON OIL TRADING & TRANSPORTATION COMPANY, Plaintiff-Appellant,
v.
WALBROOK INSURANCE COMPANY, LIMITED; El Paso Insurance
Company; Dart Insurance Company Limited; Dart & Kraft
Insurance Company; Bryanston Insurance Company; Louisville
Insurance Company; Ludgate Insurance Company, Limited;
"Winterthur" Swiss Insurance Company; Mutual Reinsurance
Company, Limited; Bermuda Fire & Marine Insurance Company;
Compagnie Europeene D'Assurances Industrielles S.A.; St.
Katherine Insurance Company, Limited; Underwriters at
Lloyd's of London, etc., et al., under policy #552/02129100;
British National Life Insurance Society, Limited;
Insurance Corporation of Ireland, Limited; Yasuda Fire and
Marine Insurance Company, Assicurazioni Generali S.P.A.;
Lexington Insurance Company; Scan Reinsurance Company,
Limited; CNA Reinsurance of London, Limited; Pine Top
Insurance Company, Limited; The Dominion Insurance Company,
Limited; Folksam International Insurance Company, Limited;
Ancon Insurance Company, Limited; Brittany Insurance
Company, Limited; Allianz Versicherungs Aktiengesellschaft;
Eisen Und Stahl Ruckversicherungs Aktiengesellschaft;
Chemical Insurance Company; Employers Insurance of Wausau;
Evanston Insurance; Insurance Company of Florida;
International Surplus Lines Insurance Company; Granite
State Insurance Company; Transit Casualty; Travelers
Indemnity Company, Defendants-Appellees.
 No. 96-35713.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 12, 1997.
Decided Dec. 23, 1997.
 
 1
 Jean E. Faure and Glenn E. Tremper, Great Falls, Montana, for the plaintiff-appellant.
 
 
 2
 Patrick R. Watt and Kirk D. Evenson, Great Falls, Montana, for the defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Montana; Paul G. Hatfield, District Judge, Presiding. D.C. No. CV-90-00122-PGH.
 
 
 4
 Before: SCHROEDER and BEEZER, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 
 5
 SCHWARZER, Senior District Judge.
 
 
 6
 The principal issue before us is whether, under Montana law, the pollution exclusion in a commercial general liability policy excludes coverage for losses sustained as a result of the addition of a foreign substance to crude oil transported in a pipeline. We hold that it does not.
 
 BACKGROUND
 
 7
 This action was brought by Enron Oil Trading & Transportation Co. ("Enron") in Montana state court against the defendants, who were its excess insurers under a liability policy. Enron seeks indemnity for amounts it paid Ashland Oil Company ("Ashland") in settlement of an action Ashland brought against Enron (formerly UPG, Inc.) and others. Ashland's complaint in that action alleged that it had suffered losses--explosions and malfunctions of its pipeline--as a result of the injection of foreign substances, so-called "B-G mix," by Enron and others into the pipeline carrying crude oil to Ashland Refinery.[1] Ashland's complaint stated claims of negligence, strict liability, breach of contract and warranty, fraud and tariff violations. That action was settled by Enron for approximately $5 million prior to trial. Enron's primary insurer provided a defense and contributed $500,000 to the settlement. The excess insurers, however, refused to participate in the settlement and this action followed.
 
 
 8
 The insurers removed the action pursuant to 28 U.S.C. § 1441(d) and 28 U.S.C. § 1330. Enron then moved for summary judgment and the insurers countered with a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). The insurers contended that coverage under their policies was barred, first, by the "pollution" exclusion, and second, by Montana's public policy barring recovery by insureds of indemnity for intentional acts. The district court rejected the insurers' first ground but granted their motion on the second ground. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part and remand.
 
 DISCUSSION
 I. Standard of Review
 
 9
 We review de novo a dismissal under Rule 12(c). McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1460, 137 L.Ed.2d 564 (1997). "A judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Id. Because this action was removed to the district court under diversity jurisdiction, the substantive law of Montana, the forum state, applies. See Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618, 624 (9th Cir.1996); Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, 1407-08 (9th Cir.1989) (court exercises diversity jurisdiction where case is removed pursuant to 28 U.S.C. § 1441(d)).
 
 II. Dismissal Under Fed.R.Civ.P. 12(c)
 
 10
 The district court found that Ashland's complaint alleged a series of knowing and intentional acts, including misrepresentation, fraud, willful breach of contract, knowing violations of the tariff and conspiracy. It held that Montana's public policy and accepted standards of fair play would be violated if Enron were permitted to benefit from its intentional and willful acts by recovering indemnity for the Ashland settlement.
 
 
 11
 We do not need to reach the issue of Montana's public policy. "A district court will render a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.' " George v. Pacific-CSC Work Furlough, 91 F.3d 1227, 1229 (9th Cir.1996) (quoting Yanez v. United States, 63 F.3d 870, 872 (9th Cir.1995)), cert. denied, --- U.S. ----, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997). Judgment "may only be granted when the pleadings show that it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " B.F. Goodrich v. Betkoski, 99 F.3d 505, 529 (2d Cir.1996) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)); see also Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir.1993).
 
 
 12
 Enron's complaint states a claim for breach of the insurance contract; it alleges coverage and refusal to indemnify in breach of the contract. The complaint in the underlying action shows that Ashland's claims were not limited to the intentional wrongful acts to which the district court adverted, but also included claims for negligence and strict liability not barred by Montana's public policy. Enron would be entitled to prove in this action that the settlement payment was, in whole or in part, attributable to the negligence and strict liability claims; it would be entitled to prove that the claims based on intentional acts were not factors--or were minor factors--in the settlement because they lacked merit. It was not required to allege in its complaint the evidentiary facts in support of its theory of recovery. See Fed.R.Civ.P. 8(a) ("A pleading ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief ....").[2] See also Trustees, Missoula County Sch. Dist. No. 1 v. Pacific Employer's Ins. Co., 263 Mont. 121, 866 P.2d 1118, 1122-23 (1993) (stating that "[a]s a general rule, an insurance company must look to the allegations of a complaint to determine if a loss is covered," and finding "the potential" for damages based on negligence, covered by the policy, sufficient to require insurer to cover loss despite applicable exclusion for other theories of recovery). Even if Montana's public policy provided a defense, it did not entitle defendants to judgment on the pleadings.
 
 III. Application of the "Pollution" Exclusion
 
 13
 We next address the insurers' further contention that they were entitled to judgment by reason of the pollution exclusion in the policy. According to Ashland's complaint, Enron and others, wrongfully or negligently, injected B-G mix, a commodity of significantly lesser value, into the crude oil common stream of the Portal Pipeline. Ashland alleged that Enron's actions violated the Portal tariff and resulted in economic damage and property damage to Ashland's refinery.
 
 
 14
 The policy under which Enron claims indemnity from the insurers contains the following limitation on coverage:
 
 
 15
 INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE
 
 
 16
 This insurance does not cover any liability for:
 
 
 17
 (1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this Paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this insurance.
 
 
 18
 (2) The cost of removing, nullifying or cleaning-up seeping polluting or contaminating substances unless the seepage pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this insurance.
 
 
 19
 (3) Fines, penalties, punitive or exemplary damages.
 
 
 20
 This Clause shall not extend this Insurance to cover any Liability which would not have been covered under this Insurance had this Clause not been attached.
 
 
 21
 The insurers contend that this clause bars Enron's claim for indemnification because the term "contamination" is unambiguous under Montana law and, in accordance with its plain meaning, the injection of B-G mix into the pipeline contaminated the oil because it was rendered "impure, less valuable and less useful." See Duensing v. Traveler's Cos., 257 Mont. 376, 849 P.2d 203, 206-07 (1993) (in dictum, adopting definition of contamination under the policy at issue as a "condition of impurity resulting from mixture or contact with a foreign substance"). The district court rejected the insurers' argument and concluded that, although "contamination" is not defined in the policy, it must be construed within the context of the pollution exclusion. "Contamination," the court held, is an environmental term of art and applies only to discharges of pollutants into the environment. Moreover, the court determined that the pollution exclusion is ambiguous and, taking a "common sense approach," rejected the insurers' interpretation as being virtually boundless and reaching far beyond the reasonable expectations of the insured, and held that it did not apply to Ashland's claim. We agree.
 
 
 22
 The interpretation of a contract is a matter of law. Augustine v. Simonson, 940 P.2d 116, 118 (Mont.1997). We review a district court's conclusions of law "to determine if the court's interpretation or application of the law is correct." Id.
 
 
 23
 The principles governing the interpretation of insurance agreements are well-settled in Montana law. "An insurance policy clause is ambiguous when different persons looking at the clause in light of its purpose cannot agree upon its meaning." Leibrand v. National Farmers Union Prop. & Cas. Co., 272 Mont. 1, 898 P.2d 1220, 1223 (1995); Bauer Ranch v. Mountain W. Farm Bur. Mut. Ins., 215 Mont. 153, 695 P.2d 1307, 1309 (1985). The insurers' argument demonstrates the ambiguity convincingly; under their interpretation, the exclusion would be virtually limitless, extending to claims for product liability (for example, a bottle manufactured with impure glass) or for negligence (for example, spoilt food served in a restaurant) that arguably involved an impurity resulting from contact with a foreign substance.
 
 
 24
 Under Montana law, "[a]mbiguities in an insurance policy are construed against the insurer and exclusions or words of limitation in a policy must be strictly construed against the insurer." Leibrand, 898 P.2d at 1223. Further, "exclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." Wellcome v. Home Ins. Co., 257 Mont. 354, 849 P.2d 190, 192 (1993) (citing Farmers Union Mut. Ins. Co. v. Oakland, 251 Mont. 352, 825 P.2d 554, 556 (1992)). "If the policy language is ambiguous as applied to the facts of a case, the construction most favorable to the insured should be adopted." Bauer Ranch, 695 P.2d at 1309 (citing Lindell v. Ruthford, 183 Mont. 135, 598 P.2d 616, 618 (1979)). And "[i]nterpretation of this clause is naturally controlled by its own context." Oakland, 825 P.2d at 556.
 
 
 25
 Given these principles, we conclude that Montana courts would hold that the pollution exclusion does not bar coverage of the claimed loss. The use of the words "seepage, pollution and contamination," together with the specific exclusion of "the cost of removing, nullifying or cleaning-up seeping polluting or contaminating substances," sends an unmistakable message to the reasonable reader that the exclusion deals with environmental-type harms. Even if a contrary interpretation could be given to the clause, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored...." Transamerica Ins. Co. v. Royle, 202 Mont. 173, 656 P.2d 820, 824 (1983) (quoting Robert E. Keeton, Insurance Rights at Variance with Policy Provisions, 83 Harv. L.Rev. 961, 967 (1970)); see also Wellcome, 849 P.2d at 193 ("The reasonable expectations doctrine is in accord with our strong public policy that insurance is intended to serve a fundamental protective purpose; to this extent the doctrine goes hand in hand with our rule of strictly construing policy exclusions.").
 
 
 26
 Our conclusion is reinforced by the decisions of other courts. In Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043-44 (7th Cir.1992), the Seventh Circuit reasoned that "[w]ithout some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results," and concluded that it did not apply to "injuries resulting from everyday activities gone slightly, but not surprisingly, awry." In American States Ins. Co. v. Koloms, 177 Ill.2d 473, 227 Ill.Dec. 149, 158, 687 N.E.2d 72, 81 (1997), the Supreme Court of Illinois, stated that "[o]ur review of the history of the pollution exclusion amply demonstrates that the predominate [sic] motivation in drafting an exclusion for pollution-related injuries was the avoidance of the 'enormous expense and exposure resulting from the "explosion" of environmental litigation,' " and "restricted the exclusion's otherwise potentially limitless application to only those hazards traditionally associated with environmental pollution." Id. 227 Ill.Dec. at 156, 687 N.E.2d at 79. See also American States Ins. Co. v. Kiger, 662 N.E.2d 945, 948 (Ind.1996) ("Clearly, this [pollution exclusion] clause cannot be read literally as it would negate virtually all coverage.").
 
 
 27
 The judgment is affirmed in part and reversed in part, and the matter remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 "B-G mix" is butane-natural gas mix, also known as "indirect liquids."
 
 
 [2]
 On remand, the district court may conclude that under Montana law the burden of proof of circumstances excluding coverage is on the insurers. See Terry v. National Farmers Union Life Ins. Co., 138 Mont. 333, 356 P.2d 975, 978 (1960) (burden of proving intentional injury exclusion under accidental death clause of life insurance policy on insurer)