165 F.3d 1238
 78 Fair Empl.Prac.Cas. (BNA) 1312,
75 Empl. Prac. Dec. P 45,781,
99 Cal. Daily Op. Serv. 474,
1999 Daily Journal D.A.R. 2630,
99 Daily Journal D.A.R. 553
Cynthia STOLL, Plaintiff-Appellant,
v.
Marvin RUNYON, Defendant-Appellee.
 No. 97-17398.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1998.
Decided Jan. 15, 1999.
As Amended March 22, 1999.
 
 Elaine W. Wallace, Oakland, California, for the plaintiff-appellant.
 Scott H. Park and Joseph E. Maloney, Assistant United States Attorneys, Sacramento, California, for defendant-appellee Marvin Runyon, Postmaster General.
 Appeal from the United States District Court for the Eastern District of California Lawrence K. Karlton, District Judge, Presiding. D.C. No. CV-97-00680-LKK.
 Before: JEROME FARRIS, STEPHEN REINHARDT, and MICHAEL DALY HAWKINS, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Cynthia Stoll, a single mother of three boys, went to work at the Sacramento Post Office in March, 1984, as a letter-sorting machine operator. She remained in that position for six years, until June 22, 1990, when she literally fled the workplace to escape the extreme sexual harassment she was experiencing. Following her departure, Stoll filed a complaint with the EEOC requesting back and front pay as well as attorneys' fees. An extensive hearing before an EEOC administrative law judge ("ALJ") was completed in 1994. The gruesome facts of this case, as found by the ALJ and admitted by the Post Office, are briefly summarized below.
 
 
 2
 The ALJ found that Stoll "was subjected to persistent and pervasive hostile environment sexual harassment from a blur of men." Numerous male coworkers and supervisors asked Stoll to perform oral sex on them, commented on her body, shot rubber bands at her backside, asked her to wear lacy black underwear for them, bumped and rubbed up against her from behind, pressed their erect penises into her back while she was sorting mail and unable to get away, followed her into the women's bathroom, asked her to go on vacations, "stalked her throughout the postal facility," and fondled her body.
 
 
 3
 The ALJ found that much of the sexual harassment was perpetrated by supervisors. Moreover, Stoll's immediate supervisor, Victor Almendarez "fostered much of the sexual harassment," because he "unreasonably intimidated" Stoll, who was described by witnesses as fairly shy. The ALJ noted the testimony of several witnesses that Almendarez seemed to take sadistic pleasure in screaming at and otherwise tormenting Stoll because she was quiet and pretty, "to the extent that she was afraid of him and could not approach him about the sexual harassment she experienced." For example, on two occasions, Almendarez refused Stoll's request to leave her workstation to go to the ladies' room because she was menstruating heavily. Instead, he forced her to remain at her letter-sorting console and bleed all over herself. She then had to go to the nurse's office covered in menstrual blood. The ALJ found Almendarez's "unsympathetic attitude toward her female health needs" particularly revolting and abusive.
 
 
 4
 Another supervisor, John Garrard, intervened on Stoll's behalf with Almendarez and did other unsolicited "favors" for Stoll and then demanded sexual services from her as a quid pro quo. Garrard often approached Stoll in the workplace and asked her if she "wanted something to suck on." He also frequently told her that he wanted to "fuck" her and asked her if she "fucked as good as she looked." When Stoll declined Garrard's advances, he raped her repeatedly. Although Stoll was too frightened and ashamed to report the first rape to the police, she did report the subsequent assaults, and Garrard was eventually ordered to stay away from her.
 
 
 5
 Garrard, predictably, claimed that Stoll was his "girlfriend." The ALJ found this assertion ludicrous, and concluded that "there was absolutely no evidence presented to indicate that the complainant and Garrard were romantically involved at any time during complainant's employment." Witnesses and coworkers testified that Garrard was "obsessed with Stoll" but that she did not like him, did everything possible to avoid him, refused to socialize with him, and was visibly afraid of him. The ALJ found that all of the advances and assaults visited upon Stoll were totally unsolicited and that she repeatedly and consistently made it clear that she had no interest in any of her attackers. He further found that Stoll was "by far the most compelling of any witness that has ever appeared before me."
 
 
 6
 The working conditions not just for Stoll but for all women at the Sacramento Post Office during that time period were characterized by the ALJ as "a glaring situation no one should have to endure." The terms and conditions of Stoll's employment were obviously negatively affected by the abusive atmosphere in which she was forced to work, an environment the ALJ concluded "was so intolerable that [Stoll] was forced to sever her employment relationship with the agency in June, 1990, and that she may never be able to work again, as a result thereof."
 
 
 7
 The ALJ further found that Stoll, understandably, suffered severe psychological damage as a result of her experiences. Stoll's psychiatrist, Dr. Weber, testified that she might never recover from the abuse and might never work again. A clinical psychologist confirmed Dr. Weber's view. The ALJ found that Stoll was "obviously scarred for life" by her work at the Post Office, that her experience had "a profound detrimental effect on her health and well being" and that she might never be able to return to work.
 
 
 8
 Stoll suffers from severe major depression and severe generalized anxiety disorder, as well as somatic form pain disorder. She is unable to attend to paperwork concerning the case due to her anxiety disorder, and cannot open her mail without experiencing a panic attack. She cannot concentrate well enough to read. She is currently considered totally psychiatrically disabled and receives federal occupational benefits. By the time of the administrative hearing in April, 1994, Stoll had attempted suicide four times, most recently just days before the hearing was set to begin, by taking 70 Valiums, Tylenol, and other anti-depressants. Stoll's anxiety, according to Dr. Weber, is particularly acute when an issue arises involving her experience at the Post Office and the subsequent proceedings, and when she is required to have any form of contact, even non-physical, with males, including, tragically, her own sons. Dr. Weber testified that Stoll is so anxious around men that she refused to sit in his office during psychiatric treatment, and instead stood in the corner as far from him as possible.
 
 
 9
 At a deposition taken in the instant lawsuit, Dr. Weber stated that because of her anxiety and fear of anything to do with the Post Office, Stoll was unable to communicate directly with the lawyer who represented her in the EEOC proceeding. Instead, her attorney sent all correspondence concerning the case to Dr. Weber's office, where his receptionist would open it and explain it to Stoll. Stoll's attorney would also call the receptionist on the phone in order to communicate about the case. According to Dr. Weber, this arrangement was established because Stoll was so anxious and depressed that she could not open her mail. Stoll would instead bring large stacks of unopened correspondence regarding the Post Office litigation to Dr. Weber because she was too traumatized to open it alone. Dr. Weber testified that a further problem in Stoll's relationship with her attorneys was that they were men, and she feared dealing with them directly.
 
 
 10
 According to Dr. Weber, Stoll has been unable to understand her legal rights and act on them from the time he began treating her in December, 1990. She is heavily medicated on Valium and Vicodan. Valium is a barbiturate, and Vicodan is a narcotic. She takes "a large amount" daily and "if she didn't have the Valium, she'd might well kill herself." Dr. Weber also testified that Stoll would probably continue to try to commit suicide and that he was trying to keep her alive.
 
 
 11
 The ALJ issued his recommended decision on April 28, 1994. As described above, he found that Stoll was the victim of both quid pro quo and hostile environment sexual harassment. He also found that Stoll suffered extreme psychological trauma as a result of the abuse. As remedies, he recommended that Stoll receive both back pay with interest and front pay until her normal retirement age, as well as the payment of her attorney's fees, and furthermore expressed profound regret that he was unable to assess damages against the Post Office under Title VII as it existed at the time the incidents occurred. In June, 1994, the Post Office issued a final agency decision adopting all of the ALJ's factual findings and recommendations except for the award of front pay. Stoll appealed the denial of front pay to the Office of Federal Operations (OFO).
 
 
 12
 On March 18, 1996, the OFO affirmed the Post Office's decision not to award front pay, on the ground that the evidence showed that Stoll might never work again. According to the OFO, awarding front pay under such circumstances would amount to awarding compensatory damages, which were not then allowed under Title VII. This decision was mailed to Stoll's then-attorney, who received it on March 25, 1996. As noted above, Dr. Weber testified that Stoll's counsel did not communicate directly with her, but sent her papers to Weber's office where his receptionist would open them, read them, and explain them to Stoll. Stoll alleges that she never received a copy of this letter. Dr. Weber testified that he did not know whether she received it or not but that neither Stoll nor his receptionist ever told him that Stoll lost her appeal and he felt certain that if Stoll knew about it she would have told him in therapy, as Stoll's experiences at the Post Office and her subsequent legal battle for redress were the subject of their work together.
 
 
 13
 The OFO decision directed the Post Office to calculate Stoll's backpay within 60 days of its March 18 letter, and to pay her in full within 60 days of the calculation. The OFO letter further, without any evident trace of irony, directed the Post Office to "afford EEO sensitivity training" to supervisor John Garrard, ostensibly because he had raped a Post Office employee. The Post Office complied with none of these remedial actions. Instead, it did nothing for more than a year.
 
 
 14
 Stoll then filed a handwritten pro se complaint against the Post Office for sexual harassment in violation of Title VII on April 21, 1997. She attached to her complaint, and incorporated by reference, a copy of the ALJ's decision, as well as a copy of an evaluation by the federal occupational psychiatrist who found that she was eligible for disability benefits due to work-related injuries inflicted by the sexual harassment, and a letter from Dr. Weber stating that she was too psychiatrically disabled to comply with relevant time periods and deadlines. The district court found that Stoll was eligible, under the criteria set forth in Bradshaw v. Zoological Soc'y of San Diego, 662 F.2d 1301, 1318 (9th Cir.1981), to have counsel appointed to represent her. Stoll's current lawyer, Elaine Wallace, was subsequently appointed by the district court's Bradshaw panel. It is worth noting that it was not until three months after she brought this lawsuit that Stoll received any part of the backpay award or attorneys' fees due her under the OFO decision.
 
 
 15
 The Post Office filed a motion to dismiss or in the alternative for summary judgment on August 28, 1997, on the ground that Stoll's claims for front pay were time-barred by the applicable statute of limitations. It asserted that Stoll's Title VII claim should be dismissed because Stoll did not file her pro se complaint until more than a year after the OFO decision letter was received by her counsel, which was well past the 90-day limitation period. Stoll responded that the statute had been equitably tolled. The Post Office disagreed, contending that she was not entitled to equitable tolling because she was represented by counsel at the time the OFO decision was issued. The district court accepted the Post Office's argument, and on November 10, 1997, entered an order dismissing all of Stoll's claims. This appeal timely followed.
 
 
 16
 Stoll is entitled to equitable tolling of the statute of limitations. Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time. Alvarez-Machain v. United States, 107 F.3d 696, 700 (9th Cir.1996). Stoll has produced more than sufficient evidence to establish equitable tolling on both grounds as a matter of law. Indeed, the evidence is overwhelming. To state the matter bluntly, if ever equity demanded tolling a statute of limitations, it does so here.
 
 
 17
 First, the Post Office is not entitled to benefit from the fact that its own admittedly outrageous acts left Stoll so broken and damaged that she cannot protect her own rights. The effects of the repeated sexual abuse, rape, and assault she experienced left her severely impaired and unable to function in many respects. She has attempted suicide numerous times-and may do so again. She is unable to read, open mail, or function in society. Thus, her failure to assert her claim within the statutory period was a direct consequence of the Post Office's wrongful conduct.
 
 
 18
 Second, Stoll's mental incapacity-and the effect it had upon her relationship with her lawyer-is an "extraordinary circumstance" beyond her control. Brockamp v. United States, 67 F.3d 260 (9th Cir.1995) ("Principles of equity mandate that when mental incompetence precludes a person from asserting his rights during the proper time period, he should not be precluded from later seeking redress for his injuries."), rev'd on other grounds, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). Stoll presented overwhelming evidence that she was completely psychiatrically disabled during the relevant limitation period.
 
 
 19
 Finally, Stoll presented compelling evidence that her mental illness, caused by the Post Office's wrongful conduct, precluded her from exercising an agency relationship with the attorney who handled her EEOC case. The district judge erred when he failed to consider this evidence. Instead, he based his refusal to toll the statute on his erroneous belief that Stoll had not "offered any explanations" for the lapse, and incorrectly presumed knowledge on her part of notice given to her attorney. See Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (holding that a client is generally charged with notice given to his attorney). To the contrary, she offered a compelling explanation--one that is more than sufficient to toll the statute of limitations as a matter of law.
 
 
 20
 Equitable tolling is permitted even when a plaintiff has a lawyer if the interests of justice so require and there is no prejudice to the defendant. Pioneer Investment Servs. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Both standards are clearly met here. First, Stoll acted in good faith and the interests of justice require that she not be barred from pursuing her claim. Stoll did not file on time because her attorney-client relationship, like the rest of her relationships with men, was seriously damaged by the egregious conduct that she seeks to redress in her lawsuit.
 
 
 21
 Second, the Post Office's claim that it was prejudiced by the delay is meritless. The only claimed prejudice that the Post Office alleges is that it would not have paid Stoll's attorney's fees had it known that she intended to pursue her front pay claim. However, the Post Office had already accepted the ALJ's recommendation that it pay Stoll's legal fees. The Post Office offers no explanation, nor can we see any, of the supposed prejudice inuring from satisfying a claim it was legally obligated to pay. Furthermore, the Post Office's claim that it would not have paid the fees had it known that Stoll was going to file a lawsuit in federal court is disingenuous, given that the fees (and other amounts undisputedly due Stoll) were not paid until July, 1997, several months after Stoll filed her pro se complaint.
 
 
 22
 Cynthia Stoll was sexually harassed, raped, and abused by supervisors and coworkers at the Sacramento Post Office. As a result of the defendant's plainly wrongful conduct, Stoll was severely psychiatrically impaired. She presented compelling direct evidence, which the district court failed to consider, that this impairment interfered with her relationship with her lawyer and rendered her unable to communicate with him or to protect her legal rights. The uncontested findings of the ALJ alone, however, are sufficient to require a judgment in her favor on this point as a matter of law. In short, the undisputed evidence in the record requires the application of the doctrine of equitable tolling in Stoll's case, notwithstanding that she had counsel in the administrative proceeding.[1] Stoll is entitled to have her front pay claim considered on the merits.
 
 
 23
 The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Although Stoll did not make a cross-motion for summary judgment on the question of equitable tolling, such a motion is unnecessary because the Post Office moved for summary judgment and none of the facts upon which our decision rests are disputed. Summary judgment for the non-moving party is appropriate if it is apparent from the record and at the hearing that there is no genuine issue of material fact, that the moving party has had a full opportunity to ventilate the issue, and the non-movant is entitled to judgment as a matter of law. Superior Engineering and Electronics Co., Inc. v. Sanders , 833 F.2d 823, 825 (9th Cir.1987); Cool Fuel, Inc. v. Connett, 685 F.2d 309 (9th Cir.1982)