**Ernesto WADE, Plaintiff,**

v.

**RATELLA, et al., Defendants.**

**No. 03CV0569BENBLM.**

United States District Court,
S.D. California.

Dec. 1, 2005.

---

**6.** This ruling, as with all rulings herein, applies only to the named Plaintiffs.

Ernesto Wade, Pro se.

Deputy Attorney General G. Michael German, San Diego, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT [Doc. No. 36(1)-(2) ]

BENITEZ, District Judge.

Plaintiff Ernesto Wade ("Wade" or "Plaintiff") is a state prisoner at the California State Prison in Los Angeles. Acting *pro se*, Wade has filed a Complaint under 42 *U.S.C.* § 1983, claiming prison

officials violated his Eighth Amendment rights.[1] Defendants move to dismiss and/or for judgment on the pleadings. Under 28 *U.S.C.* § 636(b)(1), the Honorable Magistrate Judge Barbara Lynn Major issued a thorough and thoughtful Report and Recommendation ("Report"), recommending Defendants' Motions be granted.

First, Judge Major found Wade's civil rights claims are time barred and that the facts and circumstances of his case do not support equitable or statutory tolling. Accordingly, Judge Major recommended Defendants' Motion for Judgment on the Pleadings be granted. On Defendants' motion to dismiss, Judge Major ·found that Wade's "significant delay in taking any action to prosecute his civil rights claims, as well as Plaintiff's failure either to address or oppose Defendants' motions without explanation or excuse [also] support[ed] ... recommendation that Defendants' Motion to Dismiss Complaint for failure to prosecute diligently this action be granted."

The Court's role in reviewing the Report is set forth in 28 *U.S.C.* § 636(b)(1). Under this statute, the Court "shall make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." *Id.* "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo* if **objection is made**, but not otherwise." *U.S. v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (Emphasis in original); *see also, Wang v. Masaitis,* 416 F.3d 992, 1000 (9th Cir.2005) ("Of course, *de novo* review of a [Report] is only required when an objection is made to the [Report].").

Judge Major issued her Report on October 21, 2005. Wade had until November 18, 2005 to object to the Report's findings and conclusions. To date, Wade has neither filed objections, nor a request for extension of time to do so. Notwithstanding Wade's failure to object, the Court has made a *de novo* review of Judge Major's Report. Having done so, the Court agrees with and adopts the Report in full. Thus, for the reasons set forth in Judge Major's Report, Defendants' Motions for Judgment on the Pleadings and/or to Dismiss Complaint is **GRANTED.** The Complaint is **DISMISSED.** The Clerk shall close the file

**SO ORDERED.**

**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT** [Doc. Nos. 36–37]

MAJOR, United States Magistrate Judge.

Plaintiff Ernesto Wade, a state prisoner currently incarcerated at the California State Prison, Los Angeles, and proceeding *pro se,* brings his Complaint pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Plaintiff claims that by using excessive force upon him and by subsequently failing to treat his resultant injuries, correctional officers and administrative staff employed at Richard J. Donovan Correctional Facility (RJD) violated his Eighth amendment rights.

---

1. The Complaint names the following Defendants; Ratella, the RJD Warden; P. Magee, the RJD associate Warden; RJD correctional officers D.W. Clark, J.S. Roberts, Mason, and Alvarez; and Mark R. Katz, M.D., RJD's Health Care Manager/Chief Medical Officer.

Upon review of the documents and evidence presented in this case, and for the reasons set forth below, the Court recommends that Defendants' Motion for Judgment on the Pleadings be **GRANTED**, and Defendants' Motion to Dismiss Complaint be **GRANTED**.

### PROCEDURAL BACKGROUND

Plaintiff instituted this action on March 21, 2003, naming as defendants Ratella, the RJD Warden; P. Magee, the RJD associate Warden; RJD correctional officers D.W Clark, J.S. Roberts, Mason, and Alvarez; and Mark R. Katz, M.D., RJD's Health Care Manager/Chief Medical Officer ("Defendants"). Doc. No. 1. On June 11, 2003, Judge Judith N. Keep granted Plaintiff's Motion to Proceed in Forma Pauperis, and directed the United States Marshal to effect service of process on Defendants. Doc. No. 3. On December 16, 2003, Defendants answered Plaintiff's Complaint, denying all liability and asserting numerous affirmative defenses, including the defense that Plaintiff's claims are barred by the statute of limitations. Doc. No. 8. On January 16, 2004, Plaintiff filed a Motion for Appointment of Counsel. Doc. No. 12. The Court denied Plaintiff's motion on February 18, 2004. Doc. No. 15.

On March 4, 2005, Defendants filed an Ex Parte Application to File Dispositive Motions Beyond Hearing Deadline. Doc. No. 32. This Court granted Defendants' Ex Parte Application on March 22, 2005.

Doc. No. 35. Accordingly, Defendants filed the instant Motion for Judgment on the Pleadings and to Dismiss Complaint that same day.[1] Doc. No. 36. Plaintiff has yet to file an opposition to this motion.[2]

### FACTUAL BACKGROUND

Plaintiff alleges that he sustained serious back injuries when multiple correctional officers forcibly restrained him while transporting him to an Inmate Classification Committee (ICC) hearing on May 19, 1998. Complaint at 3, 5. According to Plaintiff, he refused to attend the ICC hearing after having been informed by RJD staff that his presence was not required by law, opting instead to spend time in the prison yard. *Id.* Plaintiff claims that after he refused to attend the hearing and as he began to walk to the yard, correctional officers Clark, Alvarez, and Roberts grabbed him, twisted his arms behind his back, and "slammed" his body to the ground. *Id.* at 5. Next, Plaintiff states that correctional officer Alvarez pressed his knee hard against Plaintiff's neck, correctional officers Clark and Roberts "slammed" their knees into Plaintiff's spine, and correctional officers Clark, Roberts, Alvarez, and Mason placed restraints on Plaintiff's wrists and ankles. *Id.* Once restrained, Plaintiff asserts that the four correctional officers transported him to the hearing site stomach down, holding him by only the chains between his wrist and an-

---

1. On June 22, 2005, Defendants filed an Amended Memorandum of Points and Authorities in support of this Motion. Doc. No. 45.

2. Since filing his Motion for Appointment of Counsel on January 16, 2004, [Doc. No. 12], Plaintiff has attempted to correspond with the Court in a series of letters. Doc. Nos. 20, 34, 38, 40, 42, and 43. The Court accepted for filing only two such letters from Plaintiff. Doc. Nos. 39 and 44. In each of the accepted letters, Plaintiff attempts to allege new civil

rights violations in addition to those plead in the instant Complaint. *See* Doc. No. 39 (informing the Court of a January 6, 2005 assault against him); Doc. No. 44 (protesting his move from a level-two to a level-three prison facility, and alleging he was repeatedly denied the right to shower). Because additional claims of this kind must be raised in a separate civil rights action, this Court finds these claims inappropriate for consideration in the instant case.

kle restraints. *Id.* As a result, Plaintiff contends that his arms were swollen and bleeding, his head was bruised and swollen, his neck was stiff with pain, and his groin area was sore to the touch. *Id.*

Upon his arrival at the site of the ICC hearing, Plaintiff insists that he informed the officers present of those injuries he sustained as a result of the correctional officers' use of excessive force, and requested medical treatment. *Id.* at 5–6, Despite repeated requests for such treatment, Plaintiff asserts that he was not examined by a physician until at least one week after the incident. *Id.* at 7. Some time thereafter, Plaintiff states that his treating physician reviewed all x-rays taken and provided him with a referral to see a back specialist. *Id.* Plaintiff claims, however, that he was transferred to another prison, and ultimately was never provided the opportunity to receive treatment from the specialist. *Id.*

On April 5, 2000, Plaintiff filed the first of three formal inmate appeals claiming that RJD failed to provide him medical treatment for his injuries. *Id.* at Ex. A. Specifically, Plaintiff declared that although RJD medical staff prescribed him pain medication, allergies prevented him from taking the medication as directed. *Id.* As such, Plaintiff requested that he not only be treated by a back specialist, but also that he be issued a soft mattress and a new cane. *Id.* In response, on May 3, 2000, prison physician Hunt examined Plaintiff, referred him to the resident back specialist and issued him another cane, but denied his request for a soft mattress. *Id.*

Dissatisfied with Dr. Hunt's diagnosis and treatment, Plaintiff filed a second level appeal on May 8, 2000. *Id.* Upon review, Plaintiff's appeal was partially granted. *Id.* For example, on June 12, 2000, Health Care Manager/Chief Medical Officer Katz informed Plaintiff that an appointment with the resident back specialist would be made for him, that he could exchange his then-current cane for another, and that the specialist could write a chrono[3] instructing that Plaintiff be issued two mattresses. *Id.* at Ex. B. Once again, Plaintiff was dissatisfied with these findings and filed a third appeal. *Id.* at Ex. A. Upon review, the Inmate Appeals Branch affirmed the decision of Chief Medical Officer Katz on January 16, 2001. *Id.* at Ex. C.

Plaintiff alleges that Defendants are liable for his pain, suffering, and emotional distress resulting from those back, neck, and leg injuries he sustained at the hands of RJD correctional officers on May 19, 1998. *Id.* at 4. Plaintiff contends that the correctional officer Defendants' use of excessive force, as well as all Defendants' deliberate indifference to his serious medical needs both immediately following the use of force and during the years after the incident violated his Eighth amendment rights. *Id.* at 6–8. With regard to remedy, Plaintiff seeks damages in the amount of $250,000, and requests adequate medical treatment including treatment by a back specialist. *Id.* at 4.

Defendants contend that they are entitled to judgment on the pleadings pursuant to Federal Rule 12(c). Defs' Amended Mem. at 3–5. For example, Defendants insist that Plaintiff's allegations are not only barred by the applicable statute of limitations, but also that Plaintiff's complaint discloses no basis on which to infer that equitable tolling would be appropriate in this case. *Id.* at 4–5. Moreover, Defendants underscore that Plaintiff's delay prior to filing suit is consistent with his failure to prosecute it after filing. *Id.* at 5. Consequently, Defendants request that

---

**3.** A chrono is put in the prisoner's file and functions essentially as a permission slip.

Plaintiff's claims be dismissed with prejudice. *Id.* at 9.

In addition, Defendants argue that Plaintiff's claims must be dismissed for failure to prosecute diligently. *Id.* at 5–9. In support, Defendants first underline that Plaintiff waited nearly two years after the alleged incident before filing the first of multiple formal prison appeals. *Id.* at 2. Second, Defendants highlight that nearly five years elapsed between the date Plaintiff's alleged claim for relief accrued and the date on which he eventually filed suit. *Id.* Moreover, Defendants note that since filing his complaint, Plaintiff has done nothing other than seek court-appointed counsel. *Id.* at 3. Specifically, Defendants declare that Plaintiff has neither conducted discovery, nor complied with any of the requirements to prosecute his case. *Id.* Accordingly, Defendants maintain that Plaintiff's failure to prosecute diligently equally necessitates this case's dismissal with prejudice. *Id.* at 9.

### LEGAL STANDARDS

#### A. Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Judgment on the pleadings is "properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 753 (9th Cir.1997). "A district court will render a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'"

*George v. Pacific–CSC Work Furlough,* 91 F.3d 1227, 1229 (9th Cir.1996), *cert. denied,* 519 U.S. 1081, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997) (quoting *Yanez v. United States,* 63 F.3d 870, 872 (9th Cir.1995)). Judgment "may only be granted when the pleadings show that it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co. Ltd.,* 132 F.3d 526, 529 (9th Cir.1997) (quoting *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 529 (2d Cir.1996) (citation omitted)); *see also Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th Cir.1993).

#### B. Dismissal Pursuant to Fed.R.Civ.P. 41(b)

Federal Rule of Civil Procedure 41(b) provides that a defendant may move for dismissal of an action or claim for a plaintiff's failure "to prosecute or to comply with [the Federal Rules] or any order of court.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication on the merits." Fed.R.Civ.P. 41(b). In addition, Local Rule 41.1(a) provides that

> [a]ctions or proceedings which have been pending in this court for more than six months, without any proceeding or discovery having been taken therein during such period, may, after notice, be dismissed by the court for want of prosecution, at the calling of a calendar prepared for that purpose by the clerk. Such a dismissal shall be without prejudice, unless otherwise ordered.

CivLR 41.1(a).

██ Moreover, a district court also has an inherent power *sua sponte* to dismiss a

case for lack of prosecution.[4] *See McKeever v. Block,* 932 F.2d 795, 797 (9th Cir. 1991) (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (explaining that the "authority of the court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases")).

## DISCUSSION

### A. Defendants' Motion for Judgment on the Pleadings

In the instant Motion, Defendants first argue that they are entitled to judgment on the pleadings. Defs' Amended Mem. at 3–5. In support, Defendants maintain that Plaintiff's civil rights allegations are barred by the applicable statute of limitations. *Id.* Moreover, Defendants contend that Plaintiff's complaint fails to disclose any basis on which to infer that equitable tolling would be appropriate. *Id.* at 4–5. For his part, Plaintiff has neither responded to nor addressed Defendants' motion.

### 1. Statute of Limitations

■ Actions predicated upon § 1983 are governed by the state statute of limitations for personal injury actions. *See Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Azer v. Connell,* 306 F.3d 930, 935 (9th Cir.2002). Effective January 1, 2003, the California legislature revised the relevant statute of limitations for personal injury actions from one to two years, *See Maldonado v. Harris,* 370 F.3d 945, 954 (9th Cir.2004); Cal. Civ. Proc. § 335.1 (West Supp.2004).

■ Defendants contend, however, that former California Code of Civil Procedure § 340(3), a one-year statute of limitations, applies to all claims in this case. Defs' Amended Mem. at 3–4. In support, Defendants cite *Maldonado,* arguing that because the extension of the statute of limitations did not become effective until January 1, 2003, and because the extension is only applied retroactively to victims of the terrorist attacks of September 11, 2001, Plaintiff's claims must be evaluated under the one-year statute. *Id.* at 4. Defendants analysis is correct in this respect. Specifically, because California law instructs that "an extension of a statute of limitations will not apply to claims already barred under the prior statute of limitations unless the Legislature explicitly provides otherwise," and because the Legislature opted only to apply the extension retroactively to September 11, 2001 terrorist attack victims, the extension is inapplicable to Plaintiff's claims. *Maldonado,* 370 F.3d at 955. Consequently, California Code of Civil Procedure § 340(3) is properly applied in this case.

■ Although state law determines the length of the limitations period, "federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles,* 214 F.3d 1151, 1153–54 (9th Cir.2000). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir.2001) (quoting *TwoRivers v. Lewis,* 174 F.3d 987, 992 (9th Cir.1999)).

---

4. Despite a district court's inherent power *sua sponte* to dismiss a case, the drastic nature of such a sanction typically requires the court to warn counsel and/or a pro se plaintiff of the imminent dismissal of his or her case. *See Hamilton v. Neptune Orient Lines, Ltd.,* 811 F.2d 498, 500 (9th Cir.1987). Nevertheless, no such warning requirement exists when dismissal follows a noticed motion under Federal Rule 41(b). *See Morris v. Morgan Stanley & Co.,* 942 F.2d 648, 652 (9th Cir. 1991).

In the instant case, Defendants opine that it is undisputed that Plaintiff's claims accrued on May 19, 1998, the date on which Defendants allegedly used excessive force against Plaintiff. Defs' Amended Mem. at 4. According to Plaintiff's complaint, Plaintiff presumably knew or had reason to know of his injuries, which he believed to be the result of the correctional officer Defendants' use of excessive force, on that date. Complaint at 3, 5–6. As such, Defendants are correct that May 19, 1998 is the date of accrual with regard to Plaintiff's excessive force claim.[5]

█ Nevertheless, Defendants broad assertion overlooks Plaintiff's additional civil rights claim: that subsequent to May 19, 1998, Defendants continuously failed to provide him proper medical care in violation of his Eighth Amendment rights. *Id.* at 6–8. This claim cannot be said to have accrued until Plaintiff's inmate appeals were exhausted at all levels, which, according to Plaintiff's complaint, occurred on January 16, 2001. *Id.* at 2. Until that date, Plaintiff could neither know nor have reason to know of the full extent of the medical care he would be provided. *Id.; see also id.* at Ex. C.

Accordingly, Plaintiff's claims with regard to excessive force and deliberate indifference to serious medical needs on the date of the incident, having both accrued on May 19, 1998 and not having been plead until March 21, 2003, are rightfully barred by the applicable one-year statute of limitations. Moreover, Plaintiff's claim that Defendants were continuously and deliberately indifferent to his serious medical needs throughout the years after the May 19, 1998 incident is barred by the one-year

statute; in order for this claim to have been timely filed, Plaintiff would have had to raise it before January 16, 2002, which he did not. Prior to recommending this action's dismissal on this basis, however, this Court must analyze whether equitable tolling is appropriate in this case. *See Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir.1999) (noting circumstances in which equitable tolling may be appropriately applied).

## 2. *Equitable Tolling*

█ As with statutes of limitation, federal courts apply the forum state's law with regard to equitable tolling, when not inconsistent with federal law. *See Fink v. Shedler,* 192 F.3d 911, 914 (9th Cir.1999); *Bacon v. City of Los Angeles,* 843 F.2d 372, 374 (9th Cir.1988). The purpose of the equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Daviton v. Columbia/HCA Healthcare Corp.,* 241 F.3d 1131, 1137 (9th Cir.2001) (*en banc*) (quoting *Addison v. State,* 21 Cal.3d 313, 319, 146 Cal.Rptr. 224, 578 P.2d 941 (Cal. 1978) (internal quotation marks omitted)). Thus, California courts apply equitable tolling "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Lantzy v. Centex Homes,* 31 Cal.4th 363, 370, 2 Cal.Rptr.3d 655, 73 P.3d 517 (Cal.2003).

California's prisoner tolling provision provides:

> [i]f a person entitled to bring an action, ... is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sen-

---

5. Moreover, Defendants are correct that Plaintiff's claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs *immediately after* being transported to the site of the ICC hearing also accrued on May 19, 1998, because Plaintiff knew or had reason to know on that date that Defendants had allegedly refused to provide him with proper medical treatment. Defs' Amended Mem. at 4.

tence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Civ. Proc. § 352.1 (West Supp.2004). This tolling provision is applied in addition to the statute of limitations applicable to California tort claims. *Id.* Consequently, should equitable tolling be applied in this case, Plaintiff's excessive force claim, as well as his claim of deliberate indifference to serious medical needs based on Defendants' failure to provide him medical treatment immediately following the correctional officer Defendants' use of force, would still be barred, whereas the remaining deliberate indifference claim would not.[6]

▮ To determine whether equitable tolling applies under California law, however, three conditions must be met: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." *Bacon,* 843 F.2d at 374; *see also Addison,* 21 Cal.3d at 319, 146 Cal. Rptr. 224, 578 P.2d 941; *Electronic Equip. Express, Inc. v. Donald H. Seiler & Co.,* 122 Cal.App.3d 834, 847 n. 3, 176 Cal.Rptr.

239 (1981) (citing cases applying tolling doctrine).

Addressing each of these conditions in support of their argument against the application of equitable tolling, Defendants first contend that they were not afforded timely notice because Plaintiff filed his first inmate appeal on April 5, 2000, nearly two years after the day on which Plaintiff first sustained his physical injuries.[7] Defs' Amended Mem. at 5. Second, Defendants state that Plaintiff's "long and serial delays" in prosecuting his civil rights claims are prejudicial to Defendants, causing them to defend against claims arising from events that occurred nearly seven years ago. Defs' Amended Mem. at 5. Third, Defendants argue that Plaintiff has neither offered an explanation for his lengthy delay, nor presented evidence to suggest that his conduct was reasonable or in good faith. *Id.* Indeed, Defendants reiterate that Plaintiff has not communicated at all with both Defendants and the Court regarding his conduct. As a result, Defendants insist that Plaintiff is not entitled to the benefit of equitable tolling on any of his civil rights claims. *Id.*

▮ Defendants arguments in this regard are well taken. For example, Plaintiff's near two-year delay between the date on which he allegedly sustained physical

---

**6.** Specifically, applying the one-year statute of limitations as well as equitable tolling, those claims asserted by Plaintiff that accrued on May 19, 1998 would have to have been plead by May 19, 2001. Because Plaintiff filed the instant case on March 21, 2003, [Doc. No. 1], even the benefit of equitable tolling cannot save these civil rights claims. In contrast, applying equitable tolling to the deliberate indifference claim that accrued on January 16, 2001, Plaintiff rightfully had until January 16, 2004 in which to seek relief. As such, only this deliberate indifference claim would remain as a result of equitable tolling. However, because this Court finds that Plaintiff should not be afforded the benefit of equitable tolling, *all civil* rights claims asserted by

Plaintiff are properly barred by the statute of limitations.

**7.** Defendants note that under California Department of Corrections regulations, an inmate has but fifteen working days after any incident about which that inmate may complain to submit an inmate appeal. *Id.; see also* Cal.Code Regs. tit. 15, § 3084.6(c) (2005). This clear policy therefore begs the question why Plaintiff was allowed to commence the inmate appeal process some two years after the May 19, 1998 incident. On the record, however, this question remains unanswered.

injuries and the date on which he first filed an inmate appeal regarding those injuries is troubling, especially given the California Code of Regulations mandate that such inmate appeals be filed within fifteen working days of the incident at issue. Presumably, had Plaintiff filed his first inmate appeal within the fifteen working days after the incident as required, he very likely would have completed the inmate appeal process well in advance of January 16, 2001. Under this circumstance, Defendants would have been afforded ample notice of all civil rights claims asserted by Plaintiff. On the record, however, Defendants were made aware of Plaintiff's final claim only after Plaintiff belatedly filed his first inmate appeal two years after the incident giving rise to the claim. On these facts, Defendants cannot be said to have had timely notice. Moreover, although Defendants fail to present specific instances of prejudice, and instead merely infer its existence due to Plaintiff's lengthy failure to prosecute, such a claim of prejudice is not misplaced under the circumstances.[8] Finally, Plaintiff's failure to offer an explanation or to present evidence to suggest that his actions were reasonable or taken in good faith strongly militates against this Court's application of equitable tolling. Specifically, Plaintiff has not attempted to excuse or explain his lengthy delay in filing his prison appeal, his lack of diligence in prosecuting the instant action, or his failure to respond to Defendants' motions. Indeed, Plaintiff has not attempted to explain his conduct or argue his case at all. *Compare Azer*, 306 F.3d at 938 (determining that

plaintiffs satisfied the reasonable and good faith conduct requirement by "diligently pursu[ing] both administrative and state court remedies" and "promptly instituting actions to preserve its rights") *and Jones v. Blanas*, 393 F.3d 918, 927–30 (9th Cir. 2004) (applying equitable tolling to a civil detainee who acted in good faith to pursue his claims despite having his access to legal library and legal materials significantly curtailed).

Based on the foregoing, this Court determines that the applicable statute of limitations bars all civil rights claims asserted by Plaintiff. Moreover, in light of its analysis with regard to equitable tolling, this Court finds that the facts and circumstances of this case do not support its application here. Consequently, as required under Federal Rule 12(c), Defendants have clearly established that on the pleadings, Plaintiff "can prove no set of facts in support of his claim[s] which would entitle him to relief." *Enron Oil Trading Transp. Co.*, 132 F.3d at 529. As such, this Court recommends that Defendants' Motion for Judgment on the Pleadings be **GRANTED**.

### B. *Defendants' Motion to Dismiss Complaint*

Defendants further argue that Plaintiff's complaint must be dismissed for failure to prosecute diligently his civil rights claims. Defs' Amended Mem. at 5–9. As noted above, Defendants underline that since Plaintiff instituted this action, he has neither propounded discovery nor complied

---

8. This Court concedes that the second requirement of the equitable tolling analysis, prejudice to the defendant, should be "construed liberally in favor of the plaintiff." *Azer*, 306 F.3d at 937; *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993) (explaining that "California courts have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." (citation omitted)). Given Plaintiff's failure to provide timely notice to Defendants, however, this requirement cannot be liberally construed in Plaintiff's favor.

with any of the court's requirements to prosecute his case. *Id.* at 3, 8. Indeed, Defendants contend that Plaintiff has done nothing other than request court-appointed counsel, a request that was denied as long ago as February 18, 2004. *Id.* at 3. Again, Plaintiff has not responded to Defendants' Motion.

### 1. *Failure To Prosecute Diligently*

■ In addition to the court's authority to order dismissal under the Federal and Local Rules, the Ninth Circuit requires a district court to address five specific factors to determine whether to dismiss a case for lack of prosecution:

(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*In re Eisen,* 31 F.3d 1447, 1451 (9th Cir. 1994). This multi-factor test, however, is not "a mechanical means of determining what [ ] sanction is just." *Valley Eng'rs Inc. v. Elec. Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir.1998). Instead, the list of factors merely provides an outline "for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything." *Id.* Moreover, "[a]lthough beneficial to the reviewing court, a district court is not required to make specific findings on each of [the listed] factors." *Eisen,* 31 F.3d at 1451. Nevertheless, the Court will evaluate each of the enumerated factors in turn.

■ First, the Ninth Circuit has held that "the public's interest in the expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier,* 191 F.3d 983, 990 (9th Cir.1999). Notwithstanding this ruling, a district court must find "unreasonable delay" prior

to dismissing a particular case for lack of prosecution. *See Eisen,* 31 F.3d at 1451 (affirming the district court's determination that a bankruptcy claimant's four-year delay in taking any action to prosecute was inherently unreasonable). In the instant case, the last action taken by Plaintiff to prosecute this civil rights claims occurred on January 16, 2004, when he requested court-appointed counsel. Doc. No. 12. Since that time, the court has issued multiple scheduling orders regulating discovery and other pretrial proceedings, on which Plaintiff has taken no action. Doc. Nos. 14, 23, and 29. Moreover, after the Court granted Defendants' Ex Parte Application to file dispositive motions beyond the hearing deadline [Doc. No. 35], Plaintiff failed to respond in any way to Defendants' Motion. Indeed, the only action taken by Plaintiff over the course of the past twenty-two months includes a series of prohibited, ex parte communications with the court, the majority of which were not accepted for filing. Doc. Nos. 20, 34, 38, 40, 42, and 43. Of those communications that were accepted by the court, each attempted to allege additional civil rights violations unrelated to the underlying action, and therefore did not serve to advance the civil rights claims at issue. Doc. Nos. 39 and 44. As such, the Court finds that Plaintiff's near two-year lapse in prosecuting his civil rights claims, and his complete failure to respond to Defendants' dispositive motions constitutes unreasonable delay. As such, this factor strongly militates in favor of dismissal.

Second, the court's need to manage its docket is often reviewed in conjunction with the public's interest in the expeditious resolution of litigation and the determination of unreasonable delay. *See Eisen,* 31 F.3d at 1452. Moreover, reviewing courts acknowledge that the district court occupies a "superior position to evaluate the

effects of delay" on its own docket. *Yourish*, 191 F.3d at 991. Because Plaintiff initially filed his complaint in early 2003, coupled with the fact that this case has languished on the court's docket without activity from Plaintiff for nearly two years, this factor equally favors dismissal.

■ When considering the third factor-risk of prejudice to Defendants-the Ninth Circuit instructs that "the failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure.... The law presumes injury from unreasonable delay." *Eisen*, 31 F.3d at 1452; *Morris*, 942 F.2d at 651. Notwithstanding this instruction, the Ninth Circuit further explains that this presumption of prejudice is rebuttable. Specifically,

> where a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice. If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse. At that point, the court must exercise its

discretion by weighing the relevant factors—time, excuse, and prejudice.

*Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1281 (9th Cir. 1980). According to the *Nealey* court, prejudice, if established, is usually exhibited in two forms: loss of evidence and loss of memory by a witness.[9] *Id.* In this case, Plaintiff has offered neither excuse nor explanation for the delay in his prosecution of this case. Indeed, the record reflects that Plaintiff has failed to communicate with the court in any meaningful way with regard to those claims underlying this civil rights action for nearly two years. Having thus failed to present evidence of any kind to explain his lack of prosecution, Plaintiff has not met his burden of production necessary to force Defendants to show actual prejudice. Consequently, like the preceding factors, this factor equally works in favor of dismissal.

■ With regard to the fourth factor, this Court concedes that "public policy **strongly** favors disposition of actions on the merits." *Yourish*, 191 F.3d. at 992. Furthermore, where, as here, a case implicates important public policy concerns,[10] "the court should weigh the public interest

---

9. Notably, Defendants do not argue prejudice in the form of loss of evidence or loss of a witness' memory. Instead, Defendants ground their claims of prejudice primarily on the fact that the Correctional Law Section of the California Attorney General's Office is understaffed and overburdened, and therefore ill-equipped to address and resolve expeditiously the numerous pro per cases filed over the recent months, let alone a case that remains on the court's docket for months without formal prosecution by Plaintiff. Defs' Amended Mem. at 3, 9. However lamentable the state of this section of the Attorney General's Office legal staff may be, such circumstances alone are not enough to find prejudice to Defendants in this case. Nevertheless, because failure to prosecute diligently alone is sufficient to justify dismissal "even in the absence of a showing ·of actual prejudice to

[Defendants] from the failure," coupled with Plaintiff's failure to offer some form of excuse for his lack of prosecution, Defendants need not present evidence of actual prejudice here. *Morris*, 942 F.2d at 651.

10. Although there exists a strong public policy concern that prisoners be afforded their civil rights, the Supreme Court has equally recognized a public policy concern "to reduce the quantity and improve the quality of prisoner suits," as highlighted by Congress' enactment of the Prison Litigation Reform Act, 42 U.S.C. § 1997e. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Consequently, this latter public policy could be viewed as weighing in favor of dismissal in the instant case.

in the case and the preference for disposing of cases on their merits prior to granting dismissal." *Dahl v. City of Huntington Beach,* 84 F.3d 363, 366 (9th Cir.1996) (determining that the public had an interest in deciding a police brutality case on the merits). Nevertheless, while "the public policy favoring disposition of cases on their merits weighs against default judgment, that single factor is not enough to preclude imposition of this sanction when the other four factors weigh in its favor." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1022 (9th Cir.2002). As such, given this Court's analysis of the other factors regarding dismissal for lack of prosecution, this Court determines that this public policy concern is outweighed by the other factors supporting dismissal of this case.

Finally, the Ninth Circuit has "never held that explicit discussion of [less drastic sanction] alternatives is *necessary* for an order of dismissal to be upheld." *Malone v. United States Postal Serv.,* 833 F.2d 128, 132 (9th Cir.1987), *cert. denied,* 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988). In this case, however, both the record and the authorities militate in favor of dismissal as sanction. For example, monetary sanctions would be inappropriate because they would not remedy Plaintiff's delay, and ineffective because Plaintiff, a *pro se* prisoner proceeding in forma pauperis, arguably lacks the funds to comply with an order for sanctions. Moreover, Plaintiff could have remedied the current state of this litigation by simply presenting to the court some form of explanation or excuse for his protracted failure to prosecute his case. Having failed to offer any such explanation, coupled with the fact

that Plaintiff has had notice of Defendants' Motion to Dismiss for nearly seven months without opposing said motion or offering some kind of response thereto,[11] this final factor also favors dismissal of this case.

 In a final point, although courts must construe pleadings liberally in favor of *pro se* litigants in such prisoner civil rights cases, these same *pro se* litigants "are bound by the rules of procedure." *Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir.1995). In other words, every "plaintiff in federal court has a responsibility to prosecute his action diligently. Failure to do so may permit the district court to dismiss." *Collins v. Pitchess,* 641 F.2d 740, 742 (9th Cir.1981) (explaining that "[a]lthough prisoner status, and the infirmities it engenders, may not provide the basis to dismiss a complaint, that is not to say a prisoner's complaint is totally insulated from dismissal for want of prosecution."); *see also* CivLR 7.1.f.3.c ("If an opposing party fails to file [an opposition] in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the court."). At bottom, therefore, Plaintiff's significant delay in taking any action to prosecute his civil rights claims, as well as Plaintiff's failure either to address or oppose Defendants' motions without explanation or excuse supports this Court's recommendation that Defendants' Motion to Dismiss Complaint for failure to prosecute diligently this action be **GRANTED**.

### CONCLUSION

Because on the pleadings Plaintiff can prove no set of facts in support of his claims which would entitle him to relief,

---

**11.** Plaintiff was served with a copy of both Defendants' Notice of Motion and Motions for Judgment on the Pleadings and to Dismiss Complaint [Doc. Nos. 36–37] and Defendants' Amended Memorandum of Points and Authorities in Support of Defendants' Motions [Doc. No. 45] via first class mail.

this Court **RECOMMENDS** that Defendants' Motion for Judgment on the Pleadings be **GRANTED**. Moreover, because Plaintiff has failed to prosecute diligently his civil rights claims for a period well in excess of six months, this Court also **RECOMMENDS** that Defendants' Motion to Dismiss Complaint be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation and (2) directing that Judgment be entered granting Defendants' Motion for Judgment on the Pleadings and granting Defendants' Motion to Dismiss Complaint. Doc. Nos. 36–37.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than** *November 18, 2005*. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than** *December 16, 2005*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED.**